**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LESLIE GORDON,** | **Case No. ___________________** |
| Plaintiff, | **Hon. ________________________** |
| v. | **Mag. ________________________** |
| **HEIDI WASHINGTON**, Director of the Michigan Department of Corrections, sued in her official capacity; **JEREMY HOWARD**, Warden of Women's Huron Valley Correctional Facility (WHV), sued in his official and individual capacities; **RICHARD D. RUSSELL**, Manager of the Grievance Section, Office of Legal Affairs, sued in his official and individual capacities; **GOA DUNHAM**, Grievance Respondent at WHV, sued in his/her official and individual capacities; **T. MOORE**, Business Manager at WHV, sued in his/her official and Individual capacities; and **LEAD WORKER WHITE**, Mailroom Staff at WHV, sued in his/her official and individual capacities, | **JURY TRIAL DEMANDED** |
| Defendants. _______________________________________/ | |

**VERIFIED CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**
**FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**

## I. INTRODUCTION

1. Plaintiff Leslie Gordon brings this action under 42 U.S.C. § 1983 to redress the blatant and ongoing deprivation of her rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution.

2. The gravamen of this complaint is the unlawful, arbitrary, and capricious opening of clearly marked legal mail from the **Law Offices of David L. Moffitt & Associates, PLLC,** outside of the Plaintiff's presence, the reading of said confidential legal correspondence by prison staff, and the subsequent confiscation of the mail based on (a) the irrelevant and irrational justification that one of the attorneys at the still-extant, legitimate law firm was deceased, even though the public record of the law firm indicated that it was still staffed by attorneys in good standing with the Michigan State Bar, and (b) the irrelevant *post-hoc* rationalization that the author of the letter (revealed only after prison staff illegally opened the sealed envelope) was a paralegal who worked at the law firm and happened to be on parole.

3. Defendants' actions effectively denied Plaintiff access to the courts, pierced the veil of attorney-client privilege, and chilled Plaintiff's exercise of her First Amendment rights. The Defendants established and enforced a policy or custom of reclassifying "legal mail" as "regular mail" based on the bar status of a single attorney at a law firm and on irrelevant factors made

known to them only ***after*** opening it, in direct violation of clearly established Sixth Circuit precedent and Michigan Department of Corrections Policy Directives implementing that precedent.

4. Plaintiff has properly exhausted all three steps of the MDOC grievance process, as required by Michigan Department of Corrections Policy Directive 03.02.130, and as set forth below.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as the claims arise under the Constitution and laws of the United States.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as all of the events or omissions giving rise to the claims occurred at the Women's Huron Valley Correctional Facility (WHV), which is located within the jurisdiction of this Court, and the Defendants reside or perform their official duties within this district.

## III. PREVIOUS LAWSUITS

7. Plaintiff has not previously filed any lawsuits concerning prison conditions in either state or federal court.

## IV. PARTIES

8. **Plaintiff Leslie Gordon** (Mich. Dept. of Corrections ID No 322032) is a

prisoner in the custody of the Michigan Department of Corrections (MDOC), currently housed at the Women's Huron Valley Correctional Facility (WHV), located at 3201 Bemis Road, Ypsilanti, Michigan 48197. At all times relevant to this complaint, Plaintiff was housed at WHV.

9. **Defendant Heidi Washington** is the Director of the MDOC. She is responsible for the promulgation and enforcement of MDOC Policy Directives, including PD 05.03.118 (Prisoner Mail). She is sued in her **official capacity** for injunctive and declaratory relief to correct the unconstitutional policies regarding the handling of legal mail from law firms with deceased partners or paralegal staff.

10. **Defendant Jeremy Howard** was, at all times relevant, the Warden of WHV. He is the chief administrator of the facility and was directly involved in reviewing and denying Plaintiff's Step II grievance, thereby ratifying the unconstitutional conduct of his subordinates. He is sued in his **official and individual capacities**.

11. **Defendant Richard D. Russell** is the Manager of the Grievance Section within the MDOC Office of Legal Affairs. He reviewed and denied Plaintiff's Step III grievance, acting as the final policymaker for the Department in this instance and affirming the unconstitutional "post-hoc" reclassification of the legal mail. He is sued in his **official and individual**

**capacities**.

12. **Defendant GOA Dunham** is a staff member at WHV who served as the Step I Grievance Respondent. Defendant Dunham investigated the incident and affirmed the violation of Plaintiff's rights by upholding the rejection of the legal mail. Defendant Dunham is sued in his/her **official and individual capacities**.

13. **Defendant T. Moore** is the Business Manager at WHV who reviewed and approved the Step I grievance response, thereby concurring in the constitutional violations. Defendant Moore is sued in his/her **official and individual capacities**.

14. **Defendant Lead Worker White** is a mailroom employee at WHV. Defendant White personally opened Plaintiff’s clearly marked legal mail outside of Plaintiff's presence, read the confidential contents, contacted Plaintiff’s legal counsel without authorization, and rejected the mail. Defendant White is sued in his/her **official and individual capacities**.

15. All Defendants acted under color of state law at all times relevant to this complaint.

## V. FACTUAL ALLEGATIONS

16. Prior to 2022, Plaintiff Gordon properly requested “special handling” of her legal mail, pursuant to the Michigan Department of Corrections’ procedures

in existence at that time.

17. At all times relevant, Plaintiff Leslie Gordon was represented by attorneys at the **Law Offices of David L. Moffitt & Associates, PLLC, (hereinafer "Moffitt Law")** which Gordon retained in 2017 to challenge the criminal convictions for which she was then (and still is) incarcerated in state and federal postconviction proceedings, namely, ***People v. Leslie Gordon,*** **Wayne County Circuit Court Case No. 03-011072-01-FC (hereinafter "Gordon's case").**

18. Pursuant to the retainer agreement entered into between Gordon and Moffitt Law in 2017, Moffitt Law began filing challenges to Gordon's convictions and sentences in 2018 and continued to do so through 2025, as follows:

   a. On January 19, 2018, and again on February 23, 2018, Moffitt Law, through **Attorney David L. Moffitt (P30716)** (Deceased on 2/13/22), filed a Motion to Resolve Deferred Mandatory Restitution in the Wayne County Circuit Court in Gordon's case.

   b. On November 26, 2018, the Wayne County Circuit Court issued an order granting that motion.

   c. On March 5, 2020, through Moffitt Law, through Attorney David L. Moffitt (P30716), filed a Motion for Entry of Amended

Judgment of Sentence with the Wayne County Circuit Court in Gordon's case.

d. On August 21, 2020, the Wayne County Circuit Court entered an Amended Judgment of Sentence.

e. On September 18, 2020, Moffitt Law, through Attorney David L. Moffitt (P30716), filed a Motion to Resolve Restitution On-The-Record Pursuant, with the Wayne County Circuit Court in Gordon's case.

f. Throughout 2022, Moffitt Law, through Attorney David L. Moffitt (until he died on February 13, 2022) and then through **Attorney Tameka L. Tucker (P85402)**, and with the assistance of Moffitt Law’s Chief Paralegal **Patrick Kinney**, was preparing a motion for relief from judgment under Mich. Ct. Rule 6.500 to be filed in the Wayne County Circuit Court in Gordon's case.

g. On May 10, 2023, Moffitt Law, through **Attorney Tameka L. Tucker (P85402)**, filed a motion for relief from judgment under Mich. Ct. Rule 6.500 in the Wayne County Circuit Court in Gordon's case.

h. On November 20, 2023, the Wayne County Circuit Court issued an opinion and order (1) granting Ms. Gordon’s request to belatedly

comply with the Michigan Supreme Court’s earlier remand order in Gordon’s case and (2) denying Gordon’s remaining claim.

i. Subsequently, Moffitt Law, through Attorney Tameka L. Tucker, applied for leave to appeal from the Wayne County Circuit Court's November 20, 2023 order to the Michigan Court of Appeals and Michigan Supreme Court, both of which denied leave to appeal. *People v. Leslie Gordon*, Mich. Ct. App. No. COA: 370265, 2024 Mich. App. LEXIS 6197 (Mich. Ct. App., Aug. 13, 2024); *People v. Leslie Gordon*, Mich. Sup. Ct. No. 167585; *People v. Gordon*, 16 N.W.3d 88 (Mich. Jan. 31, 2025).

19. At all relevant times, **Patrick Kinney** was a paralegal employed by Moffitt Law, performing paralegal services that included but were not limited to legal and factual research, document drafting, and correspondence with clients of Moffitt Law as an agent of, and acting under the direct supervision of, the attorneys at Moffitt Law.

20. In November 2022, Patrick Kinney, acting in the course of his above-described employment at Moffitt Law, wrote and mailed a letter to Plaintiff Gordon at WHV regarding Moffitt Law's above described litigation in Gordon's case.

21. On or about November 30, 2022, the WHV mailroom received the envelope

that contained the above-described letter from Moffitt Law; it was delivered to WHV by the United States Postal Service, it was properly addressed to Plaintiff Gordon, and it was clearly marked on the face of the envelope as having been sent from a legitimate law firm, that is, the return address of the sender was listed as the "Law Offices of David L. Moffitt & Associates, PLLC", along with Moffitt Law's then-extant official business address on file with the State of Michigan's Bureau of Licensing and Regulatory Affairs (LARA) as the registered business address for the then-active and in-good-standing Professional Limited Liability Corporation of the same name, whose publically-listed registered agent was Attorney Tameka L. Tucker (P85402), all of which was information available to the public through LARA's online entity search portal at the time.

22. Under then clearly established Sixth Circuit precedent,[1] implemented by the Michigan Department of Corrections Policy Directive governing prisoner mail in effect at the time,[2] incoming mail "from an attorney or a law firm"

---

[1] *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)("[W]e today define 'legal mail' to include delivery of legal materials to a prisoner, properly and ***clearly marked as legal materials***, via the U.S. Postal Service or alternative private courier services, and hand delivery.")(emphasis added).

[2] PD 05.03.118 (eff. March 1, 2018), para. NN ("Only mail received directly from an attorney ***or a law firm***, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman

was required to be opened only in the presence of the prisoner for inspection for contraband and could not be read by prison staff.

23. Despite this clearly established federal law and implementing prison policy, **Defendant Lead Worker White** opened the mail, which was clearly marked as sent from a law firm, outside of Plaintiff's presence.

24. After opening the mail, Defendant White also proceeded to read the confidential correspondence contained therein.

25. Defendant White then also took the extraordinary and unauthorized step of calling the Law Offices of David L. Moffitt & Associates, PLLC, to interrogate the staff of that law firm regarding their representation of Plaintiff, further violating the sanctity of the attorney-client privilege.

26. The staff at the Law Offices of David L. Moffitt & Associates, PLLC, informed Defendant White that it sent the mail to Plaintiff Gordon as official attorney-client mail.

27. Nevertheless, on December 1, 2022, Defendant White issued a Mail Rejection Notice to Plaintiff, citing the mail as "Third Party Mail."

28. The rejection was based on the bar status of a single attorney at the law firm and a *post-hoc* justification regarding an irrelevant matter: Defendant White and subsequent reviewers claimed the mail was not "legal mail" but rather

---

is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above.")(emphasis added).

"regular mail" subject to opening, inspection, and reading by prison staff outside of Plaintiff's presence because (a) Attorney David L. Moffitt was deceased (even though David L. Moffitt was but a single attorney at the law firm named "Law Offices of David L. Moffitt ***and Associates, PLLC***, whose public listing named Attorney Tameka L. Tucker (alive and in good standing) as the manager and registered agent of the PLLC), and (b) White's reading of the letter revealed that it was authored by Patrick Kinney, a paralegal at that law firm who was then on parole.

29. Plaintiff filed a Step I Grievance (Identifier: WHV-22-12-3414-15B) on December 2, 2022, asserting that (a) Lead Worker White violated policy by opening legal mail outside her presence, (b) the rejection denied her access to the courts regarding her active case, and (c) Lead Worker White violated attorney-client confidentiality by reading the clearly-marked mail from a law firm and calling the law firm to inquire about the mail.

30. On January 17, 2023, **Defendant Dunham** (Step I Grievance Respondent) and **Defendant T. Moore** (Step I Grievance Reviewer) denied the grievance. Their response admitted that the mail was from "David Moffitt and Associates" but justified the opening by stating that the mail was "processed as regular mail per policy because this attorney is deceased and no longer in good standing". They further justified the rejection by stating that the

enclosed letter was from a "current MDOC parolee" (referring to the law firm's paralegal).

31. Plaintiff appealed to Step II of the Grievance Process, and on February 23, 2023, **Defendant Warden Jeremy Howard** denied the appeal, stating that he found no violation of policy and that the Step I response was thorough. By doing so, Warden Howard knowingly ratified and acquiesced in the unconstitutional practice of opening legal mail clearly marked as from a legitimate law firm based solely on the bar status of one of its attorneys and a post-hoc rationalization regarding the irrelevant personal status of the paralegal and agent of the attorneys at the law firm who authored the letter.

32. Plaintiff appealed to Step III. On **March 22, 2023**, **Defendant Richard D. Russell**, acting on behalf of the MDOC Director, denied the appeal, stating the issue was “investigated, and a proper decision was rendered”. By doing so, Defendant Russell knowingly ratified and acquiesced in the unconstitutional practice of opening legal mail clearly marked as from a legitimate law firm based solely on the bar status of one of its attorneys and a post-hoc rationalization regarding the irrelevant personal status of the paralegal and agent of the attorneys at the law firm who authored the letter.

33. The Defendants’ actions were not isolated incidents but part of a pattern or custom of scrutinizing legal mail and utilizing irrelevant and irrational

factors (such as the death of a named partner in a firm and *post-hoc* rationalizations) to strip prisoners of their right to confidential legal communication.

34. At all times relevant, the Law Offices of David L. Moffitt & Associates, PLLC, was a legitimate legal entity capable of correspondence, staffed by attorneys licensed to practice law in the State of Michigan, representing clients in various stages of post conviction review in their criminal cases in state and federal court, including Plaintiff Gordon, and Patrick Kinney was acting as Chief Paralegal of Moffitt Law as an agent of the attorneys at Moffitt Law, communicating on behalf of those attorneys regarding Plaintiff’s active case. The status of Mr. Kinney as a parolee does not negate the privilege of the firm's correspondence when acting as an agent of Plaintiff’s attorney.

35. As a proximate result of Defendants' actions, Plaintiff has suffered:

    a. A chilling effect on her ability to communicate candidly with her attorneys and legal team.

    b. Invasion of privacy and breach of attorney-client confidentiality.

    c. Interference with her access to the courts.

    d. Emotional distress and mental anguish.

## VI. CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FIRST AMENDMENT

### (Interference with Legal Mail / Access to Courts)

***(Against All Defendants)***

36. Plaintiff realleges and incorporates by reference the preceding paragraphs.

37. Under the First Amendment, prisoners have a right to receive mail, and specifically, a right to have “legal mail” opened only in their presence to protect against censorship and the chilling of legal communication.

38. Defendants violated this right by opening mail clearly marked as coming from the “Law Offices of David L. Moffitt & Associates, PLLC” outside of Plaintiff’s presence.

39. The Defendants’ justification—that the mail was “regular” because one of the law firm's attorneys was deceased—is an irrational, illegitimate, and unconstitutional basis upon which to ignore the clearly established constitutional rule that prison officials are prohibited from opening mail from a law firm outside the recipient prisoner's presence and was not rationally related to a legitimate penological interest.

40. Defendants Dunham, Moore, Howard, and Russell are liable for ratifying

this conduct and establishing a custom that permits mailroom staff to subjectively declassify legal mail based on irrelevant and irrational factors and thus subjectively, selectively, and unconstitutionally violate prisoners' rights.

**COUNT II**

**VIOLATION OF THE SIXTH AMENDMENT**

**(Intrusion into Attorney-Client Confidentiality)**

***(Against Defendant White)***

41. Plaintiff realleges and incorporates by reference the preceding paragraphs.

42. The Sixth Amendment guarantees the right to the assistance of counsel, which includes the right to communicate confidentially with one's attorney and their agents (paralegals).

43. Defendant White violated this right by reading the contents of Plaintiff's legal mail and subsequently contacting the law firm to interrogate its staff. This intrusion was intentional and unjustified by legitimate penological interests, as the mail was from a law firm.

44. Treating correspondence from a law firm as "Third Party Mail" merely because it is authored by a staff member at the law firm irrationally ignores the agency relationship inherent in legal representation and serves to obstruct the Plaintiff's defense and impinge her Sixth Amendment rights.

## COUNT III

## VIOLATION OF THE FOURTEENTH AMENDMENT

## (Procedural Due Process)

## *(Against All Defendants)*

45. Plaintiff realleges and incorporates by reference the preceding paragraphs.

46. Plaintiff has a liberty interest in receiving correspondence and accessing the courts.

47. Defendants deprived Plaintiff of this interest without due process by arbitrarily reclassifying her legal mail as “Third Party Mail” and “Regular Mail” without a pre-deprivation hearing or proper notice.

48. The rejection of the mail was based on vague and arbitrarily applied criteria (the “good standing” of a deceased partner of a PLLC), which fails to provide fair notice of what constitutes acceptable legal correspondence.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff Leslie Gordon respectfully requests that this Honorable Court:

A. **Declaratory Relief:** Issue a judgment declaring that the acts and omissions of the Defendants described herein violated Plaintiff’s rights under the First, Sixth, and Fourteenth Amendments. Specifically, declare that mail from a law firm and signed by a paralegal constitutes “legal mail” that must be

opened in the prisoner's presence.

B. **Injunctive Relief:** Issue a permanent injunction ordering Defendant Washington and the MDOC to:

a. Cease the practice of opening mail marked as being from a law firm outside the prisoner's presence.

b. Prohibit the reading of such mail by mailroom staff.

c. Recognize paralegals acting on behalf of a firm as agents of counsel for the purposes of mail definition.

C. **Compensatory Damages:** Award Plaintiff compensatory damages against each Defendant, jointly and severally, and in their individual capacities in the amount of $50,000 for the mental anguish, chilling of rights, and invasion of privacy suffered.

D. **Punitive Damages:** Award Plaintiff punitive damages against Defendants White, Howard, and Russell in their individual capacities in the amount of $50,000 each, for their reckless and callous indifference to Plaintiff's federally protected rights.

E. **Costs and Fees:** Award Plaintiff costs of suit and reasonable attorney fees pursuant to 42 U.S.C. § 1988.

F. **Jury Trial:** Plaintiff demands a trial by jury on all issues so triable.

G. **Other Relief:** Grant such other relief as the Court deems just and equitable.

## VIII. VERIFICATION

I, Leslie Gordon, declare under penalty of perjury that I have read the foregoing Complaint and that the factual statements contained herein are true and correct to the best of my knowledge, information, and belief.

March 5, 2026

Signature: /s/ Leslie Gordon
Leslie Gordon, Plaintiff

Respectfully submitted,

/s/ Tameka L. Tucker

March 5, 2026

**Tameka L. Tucker (P85402)**
**TLT Law, P.L.L.C.**
Attorney for Plaintiff
31800 Northwestern Hwy, Suite 340
Farmington Hills, MI 48334
(248) 831-1600
ttucker@tltlaw.org

## INDEX OF EXHIBITS

A. Prisoner Grievance WHV-22-12-3414-15B - All 3 Steps and Responses

B. Mich. Dept. of Corr. Policy Directive 05.03.118 “Prisoner Mail” eff. Mar. 1, 2018

C. Moffitt Law LARA Certificate of Amendment to the Articles of Organization dated April 4, 2022, listing Tameka L. Tucker (P85402) as registered agent and manager of Moffitt Law

D. State Bar of Michigan Director, listing Tameka L. Tucker (P85402) as an attorney of good standing licensed to practice law in Michigan

# EXHIBIT A

## Prisoner Grievance WHV-22-12-3414-15B - All 3 Steps and Responses

**Michigan Department of Corrections**
**FIRST STEP GRIEVANCE RECEIPT**

**DATE:** **12/7/2022**

**TO:** **GORDON** **322032** **LOCATION:** **WHV** **GB-30A**

**FROM:** **Grievance Coordinator:** **Boa / Hermanson**

**SUBJECT:** Receipt for Step I Grievance

**Grievance Identifier:** **WHV / 2022 / 12 / 3414 / 15B**

**Issue:** **legal mail issue**

**Received:** **12/7/2022**

**Date Due:** **12/28/2022**

Your Step I grievance was received as indicated above. You should receive a response no later than the due date listed above. If you have not received a response by this date and have not agreed to an extension, you may submit a written request for an appeal form to this office. You will need to note, on your request, the grievance identifier as listed above.

**Michigan Department of Corrections**
**GRIEVANCE INVESTIGATION DELAY LETTER**

**DATE:** **12/20/2022**

**TO:** **GORDON** **322032** **LOCATION:** **WHV** **GB-30A**

**FROM:** **Grievance Coordinator:** **Boa / Hermanson**

**SUBJECT:** **Request for Extension on Grievance Investigation**

The investigation of your grievance, Identifier **WHV / 2022 / 12 / 3414 / 15B** at, Step I, will take longer than the time provided for in procedure OP 03.02.130. Therefore an extension has been approved by this office.

The original date for completion at this step was **12/28/2022** An extension is now requested for the investigation at this step to be completed **1/23/2023** A response will be provided and sent to you by way of your facility's Grievance Coordinator.

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

RECEIVED
WOMEN'S HURON VALLEY
GRIEVANCE COORDINATOR

Date Received at Step I: DEC 06 2022

Grievance Identifier: WHV 22 12 3414 15B

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Leslie Gordon | 322032 | WHV | GB30A | 11-30-22 | 12-2-22 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. I WRote A letter to the MAilRoom

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. ON 12-1-22 I Receivec a Rejection about my legAl Mail. I have a active case and the Lead worker White sAid it was Third PARty MAil. The first violation is that the Lead worker White opened my Legal mail when control center is suppose to open my mail in front of me. The second violation is that My case is a active case so that means because I have a Retained attorney the courts send the firm the response and the firm sends it to me. I am being denied access to the courts.

Grievant's Signature

RESPONSE (Grievant Interviewed? ☐ Yes ☐ No If No, give explanation. If resolved, explain resolution.)

| | | | |
|---|---|---|---|
| Dunham | 01/17/23 | [signature] | 1/30/23 |
| Respondent's Signature | Date | Reviewer's Signature | Date |
| Dunham | GOA | T. Moore | Bus Mgr. |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

Date Returned to Grievant: 2/1/23

If resolved at Step I, Grievant sign here. Resolution must be described above.

Grievant's Signature Date

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

Attachment:

Lead WORKER White was in total violation because not only did she Read my legal mail. She called my attorney office questioning them at the firm. If you want to verify you can call the law office at [redacted] and ask to speak to Amanda OR Patrick.

Patrick is the paralegal assigned to my case.

All my legal mail is suppose to go to control center to be ~~examined~~ inspected for contraband not the mailroom.

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-247S 3/18/2019

# STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM

(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | Grievance #: |
|---|---|---|---|
| Gordon | 322032 | WHV/GB 30A | WHV-22-12-3414-15B |

**Prisoner Interviewed:** YES ☐ NO ☒ **If "NO", Reason:** Prisoner description allowed response from record.

**Extension Granted:** YES ☒ NO ☐ **If "YES", Enter End Date:** 1/23/2023

**COMPLAINT SUMMARY:**

Prisoner Gordan complains that the mailroom opened her special handling legal mail and rejected it for being sent in third party.

**INVESTIGATION SUMMARY:**

A piece of mail was received for prisoner Gordan from David Moffitt and Associates. The mail was opened and processed as regular mail per policy because this attorney is deceased and no longer in good standing according to the State Bar. It was discovered through the screening process that that the letter enclosed was from a current MDOC parolee. It is for this reason that Gordon did not receive the mail and she was issued a mail rejection.

**APPLICABLE POLICY, PROCEDURE, ETC.:**

PD 05.03.118 Prisoner Mail
OP 05.03.118A Handling Prisoner Mail
DOM 2020-33

**DECISION SUMMARY:**

The mail received for you from David Moffitt and Associates was handled according to policy and procedure.

The grievance is denied.

| | | | |
|---|---|---|---|
| **RESPONDENT NAME:** | Dunham | **TITLE:** | GOA |
| **RESPONDENT SIGNATURE:** | Dunham | **DATE:** | 1/17/2023 |
| **REVIEWER NAME:** | T Moore | **TITLE:** | Business Manager |
| **REVIEWER SIGNATURE:** | [signature] | **DATE:** | 01/17/2023 |

**Distribution:** Original - Step I Grievance Coordinator Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

**Michigan Department of Corrections**
**GRIEVANCE APPEAL RECEIPT - STEP II**

**DATE:** **2/15/2023**

**TO:** **GORDON** **322032** **LOCATION:** **WHV** **GB-30A**

**FROM:** **Grievance Coordinator:** **Boa/Hermanson**

**SUBJECT:** Receipt of the Grievance Appeal Form

I acknowledge receipt of your Step II grievance appeal, identifier **WHV / 2023 / 12 / 3414 / 15B** which was received in this office on **2/15/2023**
Unless you are otherwise notified you should be provided a Step II response within 15 business days of the date your appeal was received or no later than **3/8/2023**
If you have not received a response by this date or agreed to an extension, you may submit your step III appeal to the Directors office.

4835-4248 5/09
CSJ-247B

MICHIGAN DEPARTMENT OF CORRECTIONS

**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

RECEIVED
FEB 1 5 2023
WOMEN'S HURON VALLEY
GRIEVANCE COORDINATOR

Date Received by Grievance Coordinator at Step II:

Grievance Identifier: WHV 2212 3414 15B

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE. The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

RECEIVED
MAR 0 9 2023
Office of Legal Affairs

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: Grievance Coordinator by 2/16/23 If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Leslie Gordon | 322032 | WHV | GB30A | 11-30-22 | 2-7-23 |

**STEP II** — Reason for Appeal The First violation was my Legal mail is suppose to go to control center and opened up there in my face. The second violation is denying me access to the courts and the 3rd Violation is Attorney Client confidentialty. Lead worker White violated ~~all~~ all.

**STEP II** — Response

Date Received by Step II Respondent: 2/22/23

Warden Hand — Respondent's Name (Print)

[signature] — Respondent's Signature

2/23/23 — Date

Date Returned to Grievant: 3/1/23

**STEP III** — Reason for Appeal The evidence is ~~they~~ Lead Worker White should have never opened my Legal mail because I go to control center to be opened in front of me to be searched for contraband. Lead worker white opened my mail called my attorney office questing my ~~attoeey~~. attorney

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

**Step II Prisoner/Parolee Grievance Response**

| | | | |
|---|---|---|---|
| Prisoner Name: | Gordon | Prisoner Number: | 322032 |
| Grievance Identifier Code: | WHV-2022-12-3414-15B | LOCK | GB-30A |

STEP-I FINDINGS
The grievance was responded to at Step I by GOA Dunham and reviewed by Business Manager T. Moore who found no violation of policy.

FINDINGS
The Step I response is thorough and contains necessary information. Upon review, prisoner has supplied no new information or evidence at Step II to disprove the Step I findings or require further investigation

This grievance is denied at this level.

Signed: ______________________ Date: 2/23/2023
Jeremy Howard, Warden

GRETCHEN WHITMER
GOVERNOR

**STATE OF MICHIGAN**
**DEPARTMENT OF CORRECTIONS**
**LANSING**

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

Rec #: 141942
15B

| | | | |
|---|---|---|---|
| To Prisoner: | Gordon | #: | 322032 |
| Current Facility: | WHV | | |
| Grievance Identifier: | WHV-22-12-3414-15B | | |
| Step III Received: | 3/9/2023 | | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

**Richard D. Russell, Manager Grievance Section, Office of Legal Affairs**

**Date Mailed:** MAR 2 2 2023

**cc: Warden, Filing Facility** WHV

# EXHIBIT B

Mich. Dept. of Corr. Policy Directive 05.03.118 “Prisoner Mail”
eff. Mar. 1, 2018

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>03/01/2018 | NUMBER<br>05.03.118 |
|---|---|---|
| SUBJECT<br>PRISONER MAIL | SUPERSEDES<br>05.03.118 (11/01/2017) | |
| | AUTHORITY<br>MCL 791.203; MCL 800.43; Administrative Rules 791.6603, 791.6605 | |
| | PAGE 1 OF 13 | |

**POLICY STATEMENT:**

Mail to and from prisoners in a Correctional Facilities Administration (CFA) or Field Operations Administration (FOA) facility shall be processed as set forth in this policy.

**RELATED POLICIES:**

04.02.105 Prisoner Funds
04.02.120 Indigent Prisoners
04.07.112 Prisoner Personal Property

**POLICY:**

DEFINITION

A. Mail - Any written, typed, or printed communication of information, including magazines, catalogs, books, and photographs. Electronic messages received through the Department's approved vendor are not considered mail for purposes of this policy.

GENERAL INFORMATION

B. When in conflict with this policy, PD 05.01.142 "Special Alternative Incarceration Program" controls for prisoners in the Special Alternative Incarceration Program (SAI).

C. For purposes of this policy, "prisoner" includes parolees in the Detroit Reentry Center.

D. Prisoners shall be permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603. Mail shall not be prohibited solely because its content is religious, philosophical, political, social, sexual, unpopular, or repugnant. Prohibited incoming mail shall be rejected as set forth in the rejected mail portion of this policy.

E. Prior to rejecting mail for violation of this policy, the prisoner is entitled to a fact-finding hearing conducted pursuant to Administrative Rule 791.3310 unless otherwise specifically stated in this policy.

F. Law enforcement officials shall be contacted immediately through the appropriate chain of command if mail addressed to or sent by a prisoner contains a controlled substance or evidence of any illegal activity. Upon request of a law enforcement official and approval of the Warden, notices required to be issued and hearings required to be conducted pursuant to this policy may be delayed for a reasonable length of time to allow for a criminal investigation.

G. An item other than funds that is received through the mail which is alleged to be contraband, but does not meet the definition of "mail" pursuant to this policy, shall be treated as property and processed as set forth in PD 04.07.112 "Prisoner Personal Property." However, a prisoner may receive a single stamped self-addressed envelope that is sent in the mail from an attorney, a court, or a legitimate religious organization, provided the envelope is a standard white envelope and does not include address labels, stickers, or any other item affixed to it. The postage must be metered or "stamped postage" as sold by the United States Postal Service; a postage stamp affixed with adhesive or tape is prohibited. Additionally, free promotional items (e.g., compact discs; make-up samples) that are not authorized property pursuant to PD 04.07.112 that are attached to a publication, and fasteners holding mail together, may be removed and discarded upon receipt by the facility without notice to the prisoner if the item can be easily removed without risk of damage to the publication. If a fastener is removed that was holding mail together, the mail shall be securely sealed prior to delivery to the prisoner.

Funds received through the mail shall be processed as set forth in PD 04.02.105 "Prisoner Funds."

WRITING MATERIALS AND POSTAGE

H. Each correctional facility shall have available a reasonable quantity of free writing materials for use by prisoners; i.e., graphite pencils or blue/black ink pens; white paper (for example, multipurpose "copy" paper). Paper provided free to a prisoner does not need to be lined or of typing quality. Funds to purchase standard-size envelopes (e.g., 3 5/8" x 6 1/2"; 4 1/8" x 9 1/2") shall be loaned to prisoners eligible to receive a postage loan under this section if the prisoner does not have, or does not have the funds to purchase, an envelope.

I. Additional writing materials, including typing paper for legal work, carbon paper, envelopes, and postage shall be available for prisoner purchase in correctional facilities as set forth in PD 04.02.130 "Prisoner Store." Funds to purchase a reasonable quantity of carbon paper and to purchase over-sized envelopes of a sufficient size to mail legal materials (e.g., 10" x 15"; 15" x 20") to a court, an attorney, or a party to a lawsuit due to pending litigation, including the initial filing and service of a lawsuit, shall be loaned to a prisoner who lacks sufficient funds to purchase such items in the prisoner store. The prisoner must provide proof that the items are for litigation purposes. The funds shall be loaned by the Prisoner Benefit Fund (PBF). The cost of envelopes and carbon paper provided shall be considered an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds." Funds collected to repay a loan from a PBF shall be returned to that PBF.

J. A prisoner on indigent status pursuant to PD 04.02.120 "Indigent Prisoners" shall be loaned funds for postage as set forth in that policy.

K. Funds for additional first-class postage shall be loaned to prisoners who lack sufficient funds to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation. This includes the initial filing and service of a lawsuit. The cost of certified mail shall be loaned only if the prisoner is required by court order to use certified mail (e.g., an order denying the prisoner's motion for substituted service by first-class mail). Postage shall be loaned to prisoners on indigent status pursuant to this paragraph only after the prisoner has used all postage available pursuant to Paragraph J.

L. Funds for additional first-class postage shall also be loaned to prisoners who lack sufficient funds to mail a grievance or a Class II and Class III Misconduct Appeal (CSJ-274) to another facility or to mail a Step III grievance or a Request for Rehearing to Central Office. Funds shall be loaned for these purposes only if there is not a Department of Technology, Management and Budget (DTMB) interdepartmental mail run available and the mail must be posted before the prisoner will receive postage pursuant to Paragraph J.

M. A prisoner requesting a postage loan pursuant to Paragraph K or L may be required to present the mail unsealed to staff to verify that it qualifies for the loan. In such cases, staff shall read only those sections of the mail that are necessary to make this determination. The mail shall not be read in its entirety. The cost of any postage or envelopes loaned to the prisoner shall be borne by the PBF. Any funds loaned for postage or envelopes shall be treated as an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds." Funds collected to repay a loan from a PBF shall be returned to that PBF.

N. Prisoners shall not be loaned postage for any reason other than as set forth above.

PRISONER OUTGOING MAIL

O. Each facility shall offer prisoners outgoing mail service through the U.S. Postal Service. The facility may also offer outgoing mail service for oversize or overweight mail, including packages, through a legitimate alternate carrier. Except as set forth in Paragraphs J through M, prisoners shall be required to pay the cost of postage for any mail service used.

P. A prisoner shall be permitted to send certified and international mail, and mail that weighs more than one ounce, via disbursement. Mail that a prisoner is sending via disbursement that is clearly identified as being to a court, an attorney, or a party to a lawsuit due to pending litigation, including the initial filing and service of a lawsuit, shall be processed as soon as possible. This includes mail being sent via

disbursement to a court, an attorney, or a party to a lawsuit pursuant to Paragraph J or K. An expedited legal mail process for such mail shall be established by the CFA Deputy Director. The expedited legal mail process also shall be available to prisoners to send mail to a court or court reporter to request a transcript of the prisoner's court proceeding and to legal service organizations (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System). The prisoner may be required to present the mail unsealed to staff to verify that it qualifies for expedited legal mail handling. In such cases, staff shall read only those sections of the mail that are necessary to make this determination. The mail shall not be read in its entirety.

Q. Prisoners may use DTMB interdepartmental mail runs, in facilities where such service is available, to send postage-free mail to staff in other facilities serviced by interdepartmental mail runs and to Central Office. DTMB interdepartmental mail runs shall not be used by prisoners for any other purpose. Mail designated for delivery through a DTMB interdepartmental mail run in violation of this policy shall be returned to the prisoner consistent with Paragraph W and not processed for mailing.

R. There is no limit on the amount of outgoing mail a prisoner may send, except that prisoners are allowed to purchase and possess envelopes only in the quantities set forth in PD 04.07.112 "Prisoner Personal Property" and PD 04.02.130 "Prisoner Store." Outgoing mail must contain the prisoner's first and last name and prisoner number, and the name and address of the facility at which the prisoner is housed as the return address on the envelope. If the mail does not contain this information, the mail shall be returned to the prisoner to be corrected. However, mail which does not contain at least the prisoner's name and number may be destroyed.

S. Outgoing mail of prisoners in segregation shall not be sealed and shall be inspected by staff prior to mailing. However, mail that is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail, and subject to Administrative Rule 791.6603(5) and Paragraphs M, P, and W:

1. A licensed attorney, including the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).

2. State or federal courts.

3. Federal, state, or local public officials.

4. The Director or any other Central Office staff.

5. Staff at the institution in which the prisoner is segregated.

6. Representatives of the news media, being persons who are primarily employed to gather or report news for any of the following:

    a. A newspaper of general circulation in the community in which it publishes;

    b. A magazine of statewide or national circulation that is sold at newsstands or by mail to the general public;

    c. A radio or television station which is licensed by the Federal Communications Commission.

7. The Office of the Legislative Corrections Ombudsman.

8. A consulate or embassy.

T. General population prisoners shall be permitted to send sealed mail, subject to Administrative Rule 791.6603(5) and Paragraphs M, P, and W. However, outgoing mail may be opened and inspected if it is determined by the Warden or designee that there are reasonable grounds to believe the mail is being

sent in violation of Administrative Rule 791.6603(5). However, mail which is clearly identified as being sent to the business address of one of the following may be sealed by the prisoner and shall not be opened or otherwise inspected by staff prior to mailing, unless the entity has specifically objected in writing to receiving mail from the prisoner sending the mail or as required pursuant to Paragraphs M, P, or W:

1. A licensed attorney; this includes the Attorney General, an assistant attorney general, a prosecuting attorney, and an attorney of a legitimate legal service organization (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System).

2. State or federal courts.

3. Federal, state, or local public officials.

4. The Director or any other Central Office staff.

5. Staff at the institution in which the prisoner is housed.

6. The Office of the Legislative Corrections Ombudsman.

7. A consulate or embassy.

U. A prisoner is prohibited from sending mail addressed to anyone who has objected to receiving mail from the prisoner. This only applies after the prisoner has been notified of the objection. A prisoner who continues to send mail to a person who has objected to receiving mail from that prisoner after receiving notice of the objection also may be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline."

V. Except as set forth in Paragraph F, if it is determined that a prisoner's outgoing mail may violate Administrative Rule 791.6603(5) and that the mail therefore will not be sent, the prisoner shall be issued a notice of the alleged violation and a hearing shall be conducted pursuant to Administrative Rule 791.3310. The hearings officer shall not be the person who issued the notice. If a violation is established at the hearing, the mail shall be turned over to law enforcement authorities, if it appears to be in violation of state or federal law, or destroyed.

W. If it is determined that a prisoner's outgoing mail cannot be processed due to insufficient postage, failure of the prisoner to sign a disbursement authorization, mail returned as undeliverable, or other reason unrelated to the content of the mail, the mail shall be searched in the same manner as incoming mail prior to its return to the prisoner. Legal mail and mail to an embassy or consulate which cannot be processed for any of these reasons shall receive special handling as outlined in Paragraphs EE through HH of this policy prior to its return to the prisoner.

PRISONER INCOMING MAIL

X. Staff shall only accept mail that has been delivered from a legitimate commercial carrier (e.g., U.S. Postal Service, United Parcel Service) or through DTMB interdepartmental mail runs as provided for in this policy. Staff shall not accept mail for prisoners left at the facility by members of the public, including prisoner family members and visitors, except that attorneys may be permitted to deliver legal mail to prisoners pursuant to standards issued by the CFA Deputy Director.

Y. Prisoners shall not be permitted to receive mail identified as being sent "bulk rate" or "pre-sorted standard," as indicated by the U.S. Postal Service marking, unless it was sent from a federal or state agency or a court, is a catalog allowed pursuant to Paragraph AA, is a publication received from the publisher or an authorized vendor pursuant to Paragraph Z, or is correspondence course material approved pursuant to PD 05.02.119 "Correspondence Courses." All other mail identified by the U.S. Postal Service marking as being sent "bulk rate" or "pre-sorted standard" may be discarded upon receipt by the facility without notice to the prisoner.

Z. Prisoners shall be permitted to receive books, magazines, and other publications only if:

1. Ordered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher,

2. Ordered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher, or

3. The prisoner is approved to take a correspondence course pursuant to PD 05.02.119 "Correspondence Courses," and the publication is sent directly from the approved correspondence school.

All prisoner orders must be through established facility ordering procedures. Under no circumstances shall prisoners in a correctional facility be permitted to order a publication from an internet vendor.

AA. Prisoners shall not be permitted to receive retail or wholesale catalogs through the mail, except that a prisoner who is permitted to possess a catalog pursuant to PD 04.07.112 "Prisoner Personal Property" may receive a catalog sent directly from a vendor approved at that facility as a source of allowable prisoner personal property. Unauthorized catalogs may be discarded upon receipt by the facility without notice to the prisoner.

BB. Unless transmitted by or on behalf of the Department, mail received by staff for a prisoner via facsimile machine or e-mail may be destroyed upon receipt instead of being delivered to the prisoner, unless it is clear from the mail that it conveys emergency information (e.g., imminent death of family member) and the Warden authorizes delivery. If the mail is not delivered and the sender's address is sufficiently identified in the transmittal, the sender shall be notified by mail that the mail received via facsimile was not delivered due to the method of transmission. Subsequent transmittals by the same sender may be destroyed without notification to the sender.

CC. All incoming mail for prisoners must be clearly identified with the recipient's name and prisoner number to ensure proper delivery. Incoming mail which does not clearly identify the recipient may receive delayed processing or, if the recipient cannot be adequately identified, may be returned to the sender.

DD. All incoming mail that does not receive special handling pursuant to Paragraphs EE through HH shall be opened in one location at each facility and inspected at that location to determine if it contains money, controlled substances, or other physical contraband. All physical contraband shall be confiscated prior to delivery of the mail to the prisoner. The mail's written content also shall be skimmed, and if it appears from skimming the content that the mail may violate this policy, the item shall be read to determine if it is allowed.

MAIL REQUIRING SPECIAL HANDLING

EE. Incoming mail to a prisoner from an embassy or consulate shall receive special handling.

FF. A prisoner may have his/her incoming legal mail receive special handling by submitting a completed Mail Requiring Special Handling form (CSJ-246) to the institution's mailroom supervisor or designee. Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

GG. Each prisoner received at a reception facility shall be asked if s/he wants his/her legal mail to receive special handling. If the prisoner does not request special handling at that time, s/he shall be told that s/he may submit a request to the institutional mailroom supervisor or designee at any time during his/her incarceration by completing a Mail Requiring Special Handling form (CSJ-246).

HH. A request for special handling of legal mail shall be entered on the Department's computerized database (e.g., OMNI) within two business days after receipt. A prisoner shall not be required to renew his/her request upon transfer. Appropriate facility staff shall be responsible for determining if there is a

request for special handling of legal mail when processing mail. Legal mail shall receive special handling only if requested by a prisoner as set forth in Paragraphs FF and GG.

Processing Mail Requiring Special Handling

II. If it appears upon receipt that mail requiring special handling may have been mailed from someone other than the identified sender, mailroom staff shall confirm the mailing with the identified sender at a verified telephone number (e.g., Michigan Bar Journal). If confirmed, the mail shall then be processed with special handling. If the identified sender did not send the mail, an e-mail shall be sent to the identified sender confirming this information. A copy of the e-mail shall be retained with the log identified in Paragraph KK. In such cases, the mail will be processed in accordance with this policy but will not receive special handling.

JJ. Incoming mail receiving special handling shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence. The content of the mail shall not be read or skimmed. All physical contraband shall be confiscated prior to delivery to the prisoner. Mail opened in the prisoner's presence that clearly does not qualify for special handling or contains contraband shall be returned to the mailroom for processing in accordance with this policy.

KK. A log shall be maintained to document the delivery of mail receiving special handling. The log shall include the date the mail was received in the mailroom, the sender's name, the prisoner's name and number, the date the mail was given to the prisoner, and the prisoner's signature acknowledging receipt of the mail. If the prisoner chooses not to sign or accept the mail, that shall be documented and the mail delivered to the prisoner.

PROHIBITED INCOMING MAIL

LL. Envelopes which cannot be effectively searched may provide a means of introducing controlled substances, for example Suboxone or Fentanyl, or other contraband which poses a threat to the security, good order, or discipline of the facility. Therefore, envelopes will no longer be provided to prisoners when received in the mail except as set forth in Paragraph G. Staff shall replace incoming envelopes with a plain envelope purchased by the PBF before the mail is delivered to the prisoner. Staff shall ensure all of the contents allowed by policy that were received in the original incoming envelope are placed in the plain envelope for delivery to the prisoner. Staff shall also ensure the prisoner's name, number, and cell designation is clearly written on the plain envelope in order to ensure accurate delivery of the mail. The original incoming envelope shall then be discarded.

MM. An incoming envelope received directly from an attorney or law firm, a legitimate legal service organization, a legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman shall be discarded only after a copy of the envelope is made showing the name and address of the sender and postmark. The copy shall be delivered to the prisoner instead of the original incoming envelope and its content processed in accordance with this policy.

NN. Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:

1. Mail containing specific information regarding the manufacture, or operation of electronic security systems, weapons, explosives, ammunition, or incendiary devices.

2. Mail depicting or describing procedures for manufacturing poisons, alcohol, or controlled substances.

3. Mail violating, advocating, or promoting the violation of state or federal laws. This includes mail advocating or promoting the filing of a false or fraudulent Uniform Commercial Code (UCC) financing statement in violation of MCL 440.9501.

4. Mail advocating or promoting violence, group disruption, or insurrection.

5. Mail describing or depicting acts of sadism, masochism, bondage, necrophilia, or bestiality, or describing, depicting, or appearing to promote sexual acts involving children. This does not include small advertisements in a publication sent directly from the publisher or an authorized vendor except if the advertisement depicts or appears to promote sexual acts involving children.

6. Mail advocating racial supremacy or ethnic purity or attacking a racial or ethnic group, which is reasonably likely to promote or cause violence or group disruption in the facility.

7. Mail providing detailed instruction in the martial arts, such as judo, karate, aikido, kendu, kung fu, and similar techniques.

8. Subject to Paragraph Z, a book, magazine, newspaper, or other publication that is not received directly from the publisher, an Internet vendor identified on Attachment A, a vendor identified on Attachment B, or, if the prisoner is approved to take a correspondence course pursuant to PD 05.02.119 “Correspondence Courses,” directly from the approved correspondence school. This does not apply to an article or a few pages, or copies of a few pages, from a publication that may be included with a letter or other mail, unless it is reasonably believed to be an attempt to circumvent this restriction. Retail and wholesale catalogs are specifically addressed in Paragraph AA.

9. A used publication.

10. A publication received on a credit basis (e.g., from a book club). This does not apply if the publication is completely pre-paid and receipt does not obligate the prisoner to make future credit purchases.

11. Mail containing, or encouraging or providing instruction in, the commission of criminal activity. This includes mail encouraging or providing instruction in the filing of a false or fraudulent UCC lien.

12. Mail containing a provocative or scurrilous attack on any religion or religious group. This does not include a thoughtful and rational discussion of religious beliefs or differences between religions.

13. Nude photographs, except if included in a publication sent directly from the publisher or an authorized vendor. Nude photographs are defined as any photograph exposing the buttocks (including photographs of an individual wearing a thong with the buttocks visible), pubic area or genitalia, or, except if a baby or infant, the female breast below the top of the areola. This includes exposure through "see through" materials.

14. Photographs depicting actual or simulated sexual acts by one or more persons. This includes photographs in a publication sent directly from the publisher or a vendor authorized by the facility.

15. Non-commercially produced greeting cards; commercially produced greeting cards made of non-standard card stock paper or which have embellishments, are multi-fold, or exceed 6”x8” in size.

16. Official photographs of a victim at a crime scene or depicting injuries to a victim sustained as a result of a crime that were taken for purposes of criminal investigation or prosecution. This includes photographs of the autopsy of a victim.

17. Mail depicting, encouraging, or describing methods of escape from a correctional facility. This includes blueprints, drawings, or similarly detailed descriptions of correctional facilities, courthouses and medical care facilities, and detailed roadmaps of Michigan, any state-contiguous to Michigan, or the Province of Ontario, Canada.

18. Mail written in code, or in a foreign language which cannot be screened by institutional staff to the extent necessary to conduct an effective search. However, correspondence written in a foreign language shall be processed as set forth in Paragraphs SS through UU of this policy.

19. Mail that is known to contain personal information about an employee or an employee's family, unless it is sent by the employee and the employee is related to the prisoner by blood or marriage, or is provided with the approval of the Administrator of the Office of Legal Affairs or designee regarding pending litigation. This includes personal information published in newspapers.

20. Mail for the purpose of operating a business enterprise while within the facility. This does not apply to mail regarding the operation of a business enterprise after release.

21. Mail that is restricted or prohibited under a court order (e.g., personal protection order).

22. Mail violating postal regulations.

23. Mail containing threats.

OO. Mail which prevents an effective search may provide a means of introducing controlled substances, for example Suboxone or Fentanyl, or other contraband which poses a threat to the security, good order, or discipline of the facility. The following prevents an effective search and therefore shall be rejected, except as set forth in Paragraph PP:

1. Mail that is taped, pasted, or otherwise joined or fastened to another item. Mail shall not be rejected for a fastener that may be removed as set forth in Paragraph G.

2. Mail which includes the use of crayon, non-graphite pencil, highlighter, or other markers on the paper.

3. Mail which includes glitter, lipstick marks, unusual stains, body fluids, perfumes, oils, or other foreign or unknown substance on the paper.

4. Mail, including photographs and pictures, received on non-white, heavy weight (i.e., greater than 24 pound), construction paper, card stock, or photo paper. This does not include white lined paper.

5. Mail with stamps, stickers, labels, or anything affixed to the paper with an adhesive.

PP. A publication shall not be rejected under Paragraph OO if it is received directly from the publisher or an authorized vendor. Mail received directly from the following also shall not be rejected under Paragraph OO:

1. A correspondence school under PD 05.02.119 “Correspondence Courses.”

2. A governmental agency conducting official business with the prisoner, including but not limited to, a court, a Clerk of the Court, a Friend of the Court office, and the office of the Legislative Corrections Ombudsman.

3. An embassy or consulate conducting official business with the prisoner.

4. An attorney, a law firm, or a legal service organization conducting official business with the prisoner.

QQ. Mail depicting a sign or symbol of a security threat group designated pursuant to PD 04.04.113 “Security Threat Groups” shall be evaluated on a case-by-case basis in order to determine if the sign or symbol is believed to pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner.

RR. If any written material, picture, or photograph contained within a publication is believed to be in violation of this policy, the entire publication shall be rejected. However, if the written material, picture or photograph is in a section of a newspaper that is not stapled or otherwise affixed to the rest of the

newspaper, only that section of the newspaper shall be rejected. The rest of the newspaper shall be delivered to the prisoner.

CORRESPONDENCE WRITTEN IN A FOREIGN LANGUAGE

SS. Incoming correspondence mailed to a prisoner that is written in a foreign language shall not be interpreted or translated by Department staff or prisoners.

TT. Wardens must retain the services of one or more vendors to provide an English summary of the content of correspondence received by prisoners that is written in a foreign language and, if necessary, a detailed English translation. The summarization and translation services shall be retained via a purchase order within the facility's delegated authority. These services shall be provided in a prompt manner but not to incur overtime charges for expedited services. Summarization and translations are not required for electronic messages forwarded through the Department's contracted vendor. The use of the vendor shall be at the Department's expense.

UU. If correspondence addressed to a prisoner is written in a foreign language, staff designated by the Warden shall contact one or more of the facility's vendors for summarization and translation services and request a verbal English summarization of the correspondence. Appropriate facility staff shall prepare a written summarization using the Mailroom Foreign Language Summarization Log (CAJ-1032), making a specific notation of any potential violations of policy. If no violation of policy is noted, the item shall be promptly delivered to the prisoner. All pages of the correspondence shall be stamped "Translation Approved" and dated so that the correspondence will not be confiscated upon inspection or when the prisoner is transferred to another facility. If the correspondence is believed to be in violation of policy, staff shall initiate the mail rejection process as outlined in this policy.

REJECTED MAIL

VV. Whenever mail addressed to a prisoner is opened and believed to be in violation of policy, a Notice of Package/Mail Rejection (CSJ-316) shall be completed and promptly sent to the prisoner, except as set forth in Paragraph F. The Notice shall identify the specific item believed to be in violation of this policy and why the item is believed to be in violation of policy. A copy of the Notice shall also be sent to the person or entity that sent the mail if a return address is identified.

WW. Unless the prisoner waives his/her right to a hearing in writing by choosing an allowable disposition for the item, and the prisoner and staff agree on the appropriate disposition of the item, a prompt hearing shall be conducted pursuant to Administrative Rule 791.3310 to determine if the mail violates policy for the reason(s) identified in the Notice of Package/Mail Rejection (CSJ-316) and, if so, the appropriate disposition of the mail. The hearings officer shall not be the person who issued the Notice.

XX. If a hearing is conducted, an Administrative Hearing Report (CSJ-144) shall be completed by the hearings officer. The prisoner shall be provided the opportunity to review the mail or a copy of the mail at the hearing unless the review itself would threaten the order and security of the facility, encourage or provide instruction in criminal activity, or interfere with the rehabilitation of the prisoner. If the prisoner is not permitted to review the mail or a copy of the mail at the hearing, the hearings officer shall state the reason for that decision on the Administrative Hearing Report. If a summarization was provided for correspondence written in a foreign language, the hearings officer shall review the summarization prior to issuing a finding. The hearings officer may request a full written translation of the correspondence if necessary to issue the finding.

YY. If the hearings officer finds that the mail does not violate this policy, the mail shall be returned to the mailroom to determine if any other violations of policy exist. If other violations exist, the mail shall be processed as set forth in Paragraph VV through XX. If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered.

ZZ. If the hearings officer finds that the mail violates this policy, the hearings officer shall determine the appropriate disposition of the mail as set forth in Paragraph HHH. The disposal option chosen by the hearings officer shall be specifically stated on the Administrative Hearing Report. The hearings officer

may take into consideration the prisoner's choice of disposition in making that determination but shall identify only one disposal option on the hearing report.

AAA. Whenever a hearings officer finds that a newspaper, magazine, book, or other publication violates this policy based on its written or pictorial content, the publication shall be submitted in a timely manner to the Warden along with a copy of the Notice and the Administrative Hearing Report. If the Warden does not agree that the publication violates this policy based on its content, that decision shall be noted on the Administrative Hearing Report and the publication promptly delivered to the prisoner with a copy of the Warden's decision. If the Warden agrees that the publication violates this policy based on its written content, s/he shall proceed as set forth in Paragraph BBB. In all other cases involving the pictorial content of a publication, the Warden shall make the final decision. The Warden may maintain a list of publications rejected under his/her authority due to pictorial content.

<u>RESTRICTED PUBLICATIONS LIST</u>

BBB. If the Warden concurs with the hearings officer's decision that a publication violates this policy based on its written content, the Warden or designee shall promptly submit copies of the Notice, the Administrative Hearing Report, the publication's cover, and a representative sampling of the specific sections of the publication found to be in violation of this policy to the CFA Deputy Director or designee for a final determination whether the publication violates this policy. The Warden or designee shall be notified of the decision. The Warden shall ensure that the prisoner is notified of the decision and, if the CFA Deputy Director or designee does not agree that the publication violates this policy, ensure that the publication is promptly given to the prisoner.

CCC. If the CFA Deputy Director or designee agrees that a publication violates this policy for the reason(s) identified in the Administrative Hearing Report, it shall be placed on the Restricted Publications List. The Restricted Publications List shall be maintained by the CFA Deputy Director or designee and be available to all staff on the Document Access System (DAS).

DDD. Once a publication is placed on the Restricted Publications List, it shall be rejected at all facilities without the need for a hearing to determine the basis for the rejection removed, unless otherwise indicated on the Restricted Publication List. If a Warden maintains a list of publications rejected under his/her authority due to pictorial content pursuant to Paragraph AAA, a publication placed on that list also shall be rejected at that facility without the need for a hearing. However, a Notice of Package/Mail Rejection (CSJ-316) shall be completed whenever a publication on the Restricted Publications List or the list maintained by the Warden is subsequently received for a prisoner. Copies of the Notice shall be sent to the prisoner and to the person or entity that sent the publication, if a return address is identified. The Notice shall identify the publication and state that the publication will not be delivered because it is on the Restricted Publications List or the list maintained by the Warden, as applicable.

<u>APPEAL OF REJECTED MAIL</u>

EEE. A prisoner who disagrees with the outcome of a hearing may file a grievance as set forth in PD 03.02.130 "Prisoner/Parolee Grievances." If the publication was referred to the CFA Deputy Director or designee for a final determination pursuant to Paragraph BBB, however, the grievance should not be filed until a final determination has been made.

FFF. Within ten business days after the date of the Notice, the sender may appeal the proposed rejection by sending a letter to the Warden. An appeal received by any other facility staff shall be referred to the Warden as soon as possible. If the mail was referred to the CFA Deputy Director or designee pursuant to Paragraph BBB, the Warden shall not respond to the sender until a decision is made by the CFA Deputy Director or designee. If the mail was rejected because it was already on the Restricted Publications List, the sender's appeal shall be forwarded to the CFA Deputy Director or designee through the appropriate chain of command for review. In all circumstances, the sender shall be notified in writing whether the appeal is granted or denied. If the appeal is granted, that decision shall be noted on the Administrative Hearing Report and the mail promptly delivered to the prisoner.

<u>DISPOSITION OF REJECTED MAIL</u>

GGG. Prior to disposal, rejected mail shall be retained at the facility for at least 15 business days after the date

of issuance of the Notice of Package/Mail Rejection or hearing, whichever is later. However, if a publication was referred to the CFA Deputy Director or designee pursuant to Paragraph BBB, it shall be retained at the facility until a final decision is made by the CFA Deputy Director or designee. If the CFA Deputy Director or designee determines that the publication violates this policy, the publication shall be retained at the facility until the prisoner has exhausted the grievance process. If the sender appeals the rejection, the mail shall not be disposed of until after a response to the appeal is sent. If the mail violates state or federal law, it shall be turned over to appropriate law enforcement and only a copy retained.

HHH. After retention for the period set forth in Paragraph GGG, rejected mail shall be disposed of by one of the following methods as determined by the hearings officer or as indicated by the prisoner on the Notice of Package/Mail Rejection if a hearing is not required pursuant to Paragraph WW or DDD of this policy:

1. Returned to the sender at the prisoner's expense. Funds shall not be loaned for this purpose. If the prisoner does not have sufficient funds to pay the required postage, the mail may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent.—The mail shall be mailed out at the prisoner’s expense during this ten-day period if the prisoner receives sufficient funds to pay the cost of the postage.

2. Mailed at the prisoner's expense to a person designated by the prisoner, except that the mail shall not be sent to another prisoner, a court, an identified public official, or a Department employee unless that employee or public official is related by blood or marriage to the prisoner. Funds shall not be loaned for this purpose. If the prisoner does not have sufficient funds to pay the required postage, the mail may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent. The mail shall be mailed out at the prisoner’s expense during this ten-day period if the prisoner receives sufficient funds to pay the cost of the postage.

3. If the item is a photograph, book, or magazine, retained and stored by the facility for up to 30 calendar days for pick-up by a person designated by the prisoner. If the mail is not picked up within 30 calendar days, it may be destroyed no sooner than ten business days after the prisoner is notified in writing of this intent. The mail may be picked-up during this ten-day period.

4. If the item is the prisoner’s original certified birth certificate, original Social Security card, original GED certificate or other official document that the prisoner may need upon release, retained in the prisoner’s Record Office file until the prisoner paroles or discharges, at which time the documents shall be given to the prisoner.

5. Destroyed, except that a publication or photograph shall be destroyed only if the prisoner agrees or as allowed pursuant to nos. 1 through 3 above. Documents identified in no. 4 above shall not be destroyed.

<u>PROCESSING OF MAIL</u>

III. Facilities shall endeavor to process all incoming and outgoing mail within two business day after receipt. Mail received by any form of express mail or special delivery is not required to be expedited. Mail sent or received over holidays or weekends, and mail requiring special handling or foreign language summarization, may require additional time to process. However, mail sent via disbursement to a court, an attorney, or a party to a lawsuit shall be processed consistent with the requirements set forth in Paragraph O. Prisoners shall not be used to process mail.

JJJ. Mail received for a prisoner who has transferred to another Department facility shall be returned unopened to the postal carrier that delivered the item. The new mailing address of the prisoner shall be provided to the carrier for at least two months after the transfer to allow for forwarding of the mail, when possible. Mail received for a prisoner in a secure hospital or in Duane L. Waters Health Center shall be forwarded to the prisoner. Mail, including legal mail, received for a prisoner in any other hospital setting shall be returned to the sender unopened. If an attorney subsequently contacts the facility indicating that the returned mail contains time-sensitive information, facility staff shall contact the

CFA or FOA Deputy Director, as appropriate, for instructions how to proceed.

KKK. Upon notification of parole to the community or discharge, a prisoner must inform the mailroom supervisor in writing of his/her new address if the prisoner wants the mail forwarded as set forth in Paragraph JJJ. If a prisoner does not request that his/her mail be forwarded, any mail received for the prisoner shall be returned to the carrier for return to the sender or, if the carrier will not return the mail, for disposition in accordance with the carrier's regulations.

LLL. Mail received for a prisoner who has been released on court writ shall be returned to the carrier for return to the sender. If the carrier will not return the mail, for disposition in accordance with the carrier's regulations, unless the prisoner has made other arrangements in writing with the mailroom supervisor.

ELECTRONIC MESSAGES

MMM. Family members and other members of the public may transmit messages electronically to a prisoner. However, the electronic messages may be sent only through a vendor approved by the Department. The use of electronic messaging is considered a privilege. Senders are required by the vendor to comply with all of its terms and conditions of use, including not to use the service for a fraudulent or other inappropriate purposes. All electronic messages are scanned for suspicious content, recorded, and archived. All electronic messages will be monitored and will not receive any special handling, regardless of sender, even if the message would qualify for special handling if received through the mail.

NNN. Upon receipt at the facility, electronic messages shall be searched and processed in the same manner as set forth for mail in this policy. However, the written content may be read in its entirety to determine if it violates this policy. All electronic messages that have been determined by the vendor to include suspicious content shall be read in its entirety. An electronic message that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner shall be rejected, using the same criteria as set forth in Paragraph NN for mail.

OOO. Whenever an electronic message is rejected pursuant to Paragraph NNN, the prisoner to whom the electronic message was intended is not entitled to notice of its rejection or a hearing on the rejection. Designated staff shall notify the sender through the vendor, however, that the electronic message was rejected and therefore will not be delivered and provide the reason for the rejection. The sender may appeal the rejection in the same manner as set forth for rejected mail in this policy. The printed copy of the rejected message shall be retained for at least fifteen business days after the sender is notified of the rejection. The printed copy shall then be destroyed unless an appeal by the sender is pending or the rejection determination has otherwise been reversed. Although the printed copy is destroyed, the vendor will retain an archived copy.

PPP. The Department may block a sender from transmitting electronic messages if the sender has repeatedly sent such messages in violation of this policy or for other reasons as approved by the CFA Deputy Director. The Department may similarly block a prisoner from receipt of electronic messages if such messages have repeatedly been sent to the prisoner in violation of Department policy or for other reasons as approved by the CFA Deputy Director. Notice of the block shall be sent to the sender or prisoner, as appropriate, within a reasonable time after the block is initiated. If blocked, the sender and prisoner may continue to send/receive mail in accordance with this policy. The sender may appeal the block to the Warden.

PROCEDURES

QQQ. The CFA Deputy Director and Wardens shall ensure that procedures are developed as necessary to implement requirements set forth in this policy directive within 60 calendar days after the effective date.

AUDIT ELEMENTS

RRR. A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

ATTACHMENTS

SSS. This policy includes the following attachments:

1. Attachment A - Approved Internet Vendors

2. Attachment B - Authorized Vendors for Publications

APPROVED: HEW 02/27/2018

| DOCUMENT TYPE<br>PD ATTACHMENT | EFFECTIVE DATE<br>02/11/2019 | NUMBER<br>05.03.118A | PAGE 1 OF 1 |
|---|---|---|---|

**ATTACHMENT A**

APPROVED INTERNET VENDORS FOR PUBLIC PURCHASES

A. Prisoners may receive publications ordered by members of the public from the following Internet vendors, provided the publication is not used and is sent directly to the prisoner from the Internet vendor:

Amazon.com
BarnesandNoble.com
EdwardRHamilton.com and HamiltonBooks.com
prisonlegalnews.org/humanrightsdefensecenter.org/action/publishing/
Schulerbooks.com
Walmart.com

B. Visually impaired prisoners who read Braille also may receive Braille publications ordered by members of the public from the following Internet vendor provided the publication is sent directly to the prisoner from the vendor:

American Printing House for the Blind (aph.org)

NOTES:

1. Under no circumstances shall prisoners in a correctional facility be permitted to order publications from an Internet vendor.

2. Prisoners also may receive publications ordered by members of the public from a publisher provided the publication is not used, was sent directly to the prisoner by the publisher, and does not otherwise violate this policy.

3. Some approved Internet vendors, such as Amazon.com, allow private individuals and other vendors to directly sell publications on their websites. In such cases, prisoners are allowed to receive the publication only if the vendor actually selling the publication is identified on this attachment as an approved vendor

4. Some approved internet vendors, such as Amazon.com, no longer include an invoice or packing slip with the packages they ship verifying that the delivered publication is in compliance with this policy. To assist in ensuring that the item can be delivered, written verification that the publication was purchased from the approved vendor must be provided. This can be done by:

   a. Requesting a gift receipt be included with the package at the time of purchase.

   b. Sending to the prisoner a copy of the invoice provided to the purchaser by the internet vendor. The invoice may be sent via the US mail or by e-mail through J-pay

APPROVED: HEW 01/07/2019

**ATTACHMENT B**

AUTHORIZED VENDORS FOR PRISONER PURCHASES OF PUBLICATIONS

A. Prisoners may order and receive non-used publications from the following vendors:

Edward R. Hamilton Bookseller
Prison Legal News/Human Rights Defense Center
Schuler Books & Music

B. Visually impaired prisoners who read Braille also may order and receive Braille publications ordered from the following vendors:

National Library of Congress
Service for the Blind and Physically Handicapped
American Printing House for the Blind

C. The Warden or designee may authorize additional local vendors from whom prisoners at their respective facilities may order and receive non-used publications. The prisoner shall be permitted to receive the publication, subject to other policy restrictions, if transferred to another facility prior to receipt of the publication.

D. The CFA Special Activities Coordinator shall authorize vendors from whom prisoners may order and receive non-used religious publications, as set forth in PD 05.03.150 "Religious Beliefs and Practices of Prisoners." A list of authorized religious vendors is available on the Department's Document Access System (DAS).

All publications must be ordered from the above vendors through institutional ordering procedures and received directly by the prisoner from the vendor. Publications ordered from the above vendors from members of the public shall be rejected in accordance with Paragraph MM and NN of this policy. Publications ordered by prisoners are subject to all requirements set forth in this policy.

Prisoners also may receive publications ordered through institutional ordering procedures, or by members of the public, from the publisher provided the publication was sent directly to the prisoner from the publisher and does not otherwise violate this policy.

PD 05.01.142 "Special Alternative Incarceration Program" controls for prisoners in the Special Alternative Incarceration Program.

APPROVED: HEW 03/27/2018

Notice Regarding Prisoner Mail

On October 17, 2019, the following information was emailed to all Wardens for dissemination to staff:

> This is a reminder that each facility must comply with the procedures set forth in Policy Directive 05.03.118, *Prisoner Mail*, and Department Operating Procedure 05.03.118A, *Handling Prisoner Incoming Mail*, paragraph G regarding the rejection of prisoner mail, including the following:
>
> - Mail should not be prohibited solely because the content is religious, social, unpopular, etc.
> - Prisoners are prohibited from receiving mail that may pose a threat, including the example situations listed
> - A notice of a rejection must be sent to the sender as well as the prisoner
> - Levels of review and the appeal process
>
> Additionally, please have the mailroom staff conduct a read-and-sign of PD 05.03.118 and Statewide OP 05.03.118A by November 15, 2019, and send the completed signatures to Litigation Specialist Jaquine Castillo.
>
> Please ensure that any facility operating procedures are also in compliance no later than November 30, 2019, and include the review process, notice to the prisoner and sender, and the availability of appeal.
>
> If you have any questions, please contact the Office of Legal Affairs Administrator Jared Warner.

EXHIBIT C

Moffitt Law LARA Certificate of Amendment to the Articles of Organization of April 4, 2022, listing Tameka L. Tucker (P85402) as registered agent and manager of Moffitt Law

LARA Corporations Online Filing System
Department of Licensing and Regulatory Affairs

Form Revision Date 07/2016

# CERTIFICATE OF AMENDMENT TO THE ARTICLES OF ORGANIZATION

For use by DOMESTIC PROFESSIONAL LIMITED LIABILITY COMPANY

*Pursuant to the provisions of Act 23, Public Acts of 1993, the undersigned executes the following Certificate of Amendment*

The identification number assigned by the Bureau is: 802219888

The name of the professional limited liability company is: LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES PLLC

The date of filing the original Articles of Organization was: 8/1/2018

Article IV

The Street address of the registered office of the professional limited liability company and the name of the resident agent at the registered office (P.O. Boxes are not acceptable):

1. Agent Name: TAMEKA L. TUCKER
2. Street Address: 30800 TELEGRAPH RD, SUITE 1705
   Apt/Suite/Other:
   City: BINGHAM FARMS
   State: MI Zip Code: 48025
3. Registered Office Mailing Address:
   P.O. Box or Street Address: 30800 TELEGRAPH RD, SUITE 1705
   Apt/Suite/Other:
   City: BINGHAM FARMS
   State: MI Zip Code: 48025

(Insert any additional provision authorized by the Act.)

ARTICLE VI

THE BUSINESS IS TO BE MANAGED BY OR UNDER THE AUTHORITY OF A MANAGER, NAMELY TAMEKA L. TUCKER (P 85402), FOR A REASONABLE PERIOD UNTIL THE BUSINESS CAN BE SOLD TO A QUALIFIED PROFESSIONAL BY KATHRYN L. BOUGH, PERSONAL REPRESENTATIVE AND ASSIGNEE OF DAVID L. MOFFITT, THE NOW DECEASED SOLE ORGANIZING MEMBER AND MANAGER OF THE BUSINESS, IN ACCORDANCE WITH SECTION 908 OF P.A. 23 OF 1993.

The amendment was approved by unanimous vote of all the members entitled to vote.

This document must be signed by a member, manager, or an authorized agent:

Signed this 23rd Day of March, 2022 by:

| Signature | Title | Title if "Other" was selected |
|---|---|---|
| Kathryn L. Bough | Other | Personal Representative & Asignee of David L. Moffitt, Membe |
| | | |

By selecting ACCEPT, I hereby acknowledge that this electronic document is being signed in accordance with the Act. I further certify that to the best of my knowledge the information provided is true, accurate, and in compliance with the Act.

Decline Accept

# *MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS*

## *FILING ENDORSEMENT*

***This is to Certify that the*** CERTIFICATE OF AMENDMENT TO THE ARTICLES OF ORGANIZATION

***for***

LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES PLLC

***ID Number:*** 802219888

***received by electronic transmission on*** March 23, 2022 ***, is hereby endorsed.***

***Filed on*** April 04, 2022 ***, by the Administrator.***

***The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.***

LICENSING AND REGULATORY AFFAIRS
E PLURIBUS UNUM
TUEBOR
SI QUÆRIS PENINSULAM AMŒNAM
CIRCUMSPICE
Corporations, Securities & Commercial Licensing Bureau

***In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department,***
*in the City of Lansing, this 4th day of April, 2022.*

Linda Clegg

*Linda Clegg, Director*
*Corporations, Securities & Commercial Licensing Bureau*

EXHIBIT D

State Bar of Michigan Directory, listing Tameka L. Tucker (P85402) as an attorney of good standing licensed to practice law in Michigan

SBM
State Bar of Michigan

Sign In | Home

Home > Search Results

Name or Practice area

City, State or Zip

Pricing | Languages | More Filters

Filtered By: Tameka L. Tucker | Member: Good Standing | Clear All

Sort By: Nearest

## Tameka LaShawn Tucker

TLT Law, PLLC

Criminal Defense | Criminal Law | Divorce | >>

Contact

License# P85402

Active Member in Good Standing

Admitted 2021

Licensed in MI

Farmington Hills, MI

Privacy - Terms

...und 1 Lawyers < 1 >

Help